IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CR 07-0428-TUC-JMR (HCE) |
| Plaintiff, ) | **REPORT AND RECOMMENDATION** |
| vs. ) | |
| EDGAR TAPIA, ) | |
| Defendant. ) | |

Defendant filed the instant Motion to Dismiss Indictment for Destruction of Evidence alleging that the Government's destruction of potentially exculpatory evidence, i.e. a videotape at the Nogales, Arizona Grand Avenue Port of Entry of a scuffle involving Defendant, was in bad faith and violative of Defendant's Fifth Amendment due process rights. Defendant's Motion came on for hearing on August 22, 2007.

For the reasons stated herein, the Magistrate Judge recommends that the District Court deny Defendant's Motion to Dismiss Indictment for Destruction of Evidence.

I. PROCEDURAL AND FACTUAL HISTORY

Defendant is charged with two counts of Assault on a Federal Officer in violation of 18 U.S.C. §111(a)(1). It is alleged that on February 7, 2007 at 10:28 a.m. at the Nogales, Arizona Grand Avenue Port of Entry (hereinafter "POE") Defendant intentionally and forcibly assaulted, resisted, opposed, impeded, intimidated and interfered with United States Customs and Border Protection (hereinafter "CBP") Officers John Holman (Count 1) and Matthew Escarcega (Count 2), officers of the United States Department of Homeland

1  Security, while said officers were engaged in and on account of the performance of their
2  official duties, and did inflict bodily injury to said officers, that is, Defendant struck each
3  officer in the face, such act constituting more than simple assault.

4  On February 7, 2007 CBP Officer Laura Hermosillo was assigned to work in the Nogales,
5  Arizona Command Center (hereinafter "NCC") manning the cameras and phones, as well as
6  reporting functions of the NCC. (Laura Hermosillo Transcribed Testimony (hereinafter
7  "Hermosillo p. __") pp. 5, 7)  These duties entail watching cameras for incidents involving
8  officer safety, answering incoming phone calls to the POE, and preparing reports to the post
9  director.  (Hermosillo p.6) At the NCC, there are 16 computer monitors that canvass 100
10 cameras positioned at the DeConcini POE, the Mariposa POE, the Morely Gate and the cargo
11 facility.  (Hermosillo p. 6)

12 On February 7, 2007 at 10:28 a.m. CBP Officer Hermosillo was watching the monitors
13 when she noticed that some officers were taking a subject, i.e., Defendant, from a location
14 outside of the port to the supervisor's office.  (Hermosillo p. 7)  She rewound the video,
15 could not see the incident itself but believed there had been a scuffle from the way people
16 in the area responded.  (Hermosillo p. 8)  She called Supervisor Klump who told her to
17 archive, i.e., save, the video. (Hermosillo pp.8-9)  She informed him that the actual incident
18 could not be seen.  (Hermosillo p. 9)

19 To archive a video, the officer plays it back to the desired date and time, adds "archive"
20 and names the video.  (Hermosillo p. 9)  On February 7, 2007, the systems at the NCC were
21 being upgraded and CBP Officer Hermosillo was unable to archive the video as instructed.
22 (Hermosillo p. 10)  She called the Tucson Command Center and was told by Supervisor
23 Sullivan that they would attempt to archive the video.  (Hermosillo p. 10.).

24 Whatever cameras are functioning at the POE can be viewed at the Tucson Command
25 Center which has 30 monitors with 16 screens on each. (Jose De Luna Transcribed
26 Testimony (hereinafter "De Luna p. _") p. 26)  Whatever events are viewed on the screen
27 are viewed simultaneously as they occur, i.e., real time.  (De Luna pp. 26-27) The Tucson
28

1   Command Center can remotely access the video at the NCC and make a recording, i.e.,
2   archive, of a situation and place it on disc. (De Luna p.28)

3   The recording systems at the NCC were undergoing an upgrade and had been experiencing
4   problems in archiving capabilities. (Exhibit 5; <u>see also</u> Kevin Pouder Transcribed Testimony
5   pp. 36-42) Because of these problems the "window" of time to record a video onto disc had
6   been 7 days reduced to 72 hours and then "it just vanished." (De Luna pp. 29-30) CBP
7   Officer Hermosillo's recollection is that the video could only be archived up to the previous
8   hour. (Hermosillo pp. 10-11)

9   CBP Officer Hermosillo e-mailed Supervisors De Luna, Kenneth Sullivan and Lorena
10  Calderon at the Tucson Command Center on February 7, 2007 at 11:59 a.m. regarding her
11  inability to archive the incident of February 7, 2007 occurring from10:28 a.m. to 10:31 a.m.
12  and requested that they archive it anticipating that Immigration and Customs Enforcement
13  (hereinafter "ICE") would be requesting it. (Exhibit 2) Neither the Tucson nor the Nogales
14  Command Center have access to hand-held video cameras which would have enabled them
15  to film the video that appears on the monitor. (De Luna pp. 33-34; Hermosillo p. 15)

16  Within minutes of reviewing the video that captured the scuffle and Defendant being
17  escorted away, CBP Officer Hermosillo advised her supervisor that there was only an hour
18  available before the video would elapse. (Hermosillo pp. 15-16, 17)

19  The camera that is alleged to have captured the scuffle was affixed to a specific location
20  and viewed the western most southbound lane at the POE. (Exhibit 1 p. 1; Hermosillo p. 23-
21  24)

22  On February 7, 2007, ICE Special Agent (hereinafter "ICE/SA") Robert Whitchurch was
23  the on-call duty agent and he received a phone call from CBP regarding a scuffle that had
24  occurred at the NCC. He responded to the NCC and spoke with CBP Officer Alma Vasquez
25  and asked her to archive the video in question. (Robert Whitchurch Transcribed Testimony
26  (hereinafter "Whitchurch p. __") pp. 43, 52)

27  On February 9, 2007, ICE/SA Whitchurch called the Tucson Command Center, requested
28  a copy of the video in question, and was informed by CBP Officer Scott Osborne that there

1  was no video. (Whitchurch p. 46)   ICE/SA Whitchurch visited the NCC on February 13,
2  2007 to request footage of the February 7, 2007 10:28 a.m. to 10:31 a.m. incident.  In
3  response to this visit CBP Officer Hermosillo requested on February 14, 2007 that the
4  Tucson Command Center archive the video in question, noting that the "actual scuffle/assault
5  is not visible." (Exhibit 2)

6  II.  LAW:

7  The Government must disclose all evidence in its possession favorable to the defendant
8  material to guilt or punishment.  Brady v. Maryland, 373 U.S. 83. (1963) Moreover:

> Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, ...or portions of any of these items, if the item is within the government's possession, custody, or control and: (1) the item is *material* to preparing the defense;....

Fed.R.Crim.P.  16(a)(1)(E) (emphasis added).

The Government violates a defendant's right to due process if 1) the unavailable evidence possessed exculpatory value that was apparent before such evidence was destroyed; 2) the unavailable evidence was of such a nature that a defendant would be unable to obtain comparable evidence by other reasonably available means, California v. Trombetta, 467 U.S. 479, 489 (1984); see also United States v. Martinez-Martinez, 369 F.3d 1076, 1087 (9th Cir. 2004); and 3) a defendant must demonstrate that the law enforcement agency acted in bad faith in failing to preserve the potentially useful evidence. Arizona v. Youngblood, 488 U.S. 51, 58 (1988).

### A.   APPARENT EXCULPATORY VALUE

Defendant posits that the "apparent exculpatory value" on the video recording before its destruction was that it recorded a "scuffle." Consequently, the potential exculpatory value could arguably be evidence: of self defense, United States v. Feola, 420 U.S. 671, 680 (1975); that the identity or authority of the federal officer was not apparent, United States v. Goldson, 954 F.2d 51, 54-56 (2nd Cir. 1992); that the defendant's use of force was not excessive, United States v. Loman, 551 F.2d 164, 167 (7th Cir. 1977); or that there was a lack of probable cause, United States v. Moore, 483 F.2d 1361, 1364-65 (9th Cir. 1973). The

- 4 -

1  video's contents regarding the events of February 7, 2007 at 10:28 a.m. could have been
2  material to Defendant herein establishing anyone of the above-listed defenses.

### B.     OTHER REASONABLY AVAILABLE MEANS

The video camera is one of 100 positioned at the POE manned by CBP Officers and are in the Government's exclusive possession, custody and control. The only source of memorialized events at the NCC by video is the Government and Defendant herein had no alternative comparable evidence by any other means. However, once the video was lost after an hour it no longer was in the Government's possession, custody or control.

### C.     BAD FAITH

A due process violation occurs whenever the Government suppresses or fails to disclose *material exculpatory evidence*. See Brady, 373 U.S. 83; United States v. Agurs, 427 U.S. 97 (1976), abrogated on other grounds by United States v. Bagley, 473 U.S. 667 (1985). The good or bad faith of the Government is irrelevant. Id. On the other hand, there is no due process violation for failure to preserve *potentially useful evidence* unless a defendant can show bad faith on the part of the Government. Youngblood, 488 U.S. at 58. See Illinois v. Fisher, 540 U.S. 544, 549 (2004) ("...the applicability of the bad-faith requirement in Youngblood depended not on the centrality of the contested evidence to the prosecution's case or the defendant's defense, but on the distinction between 'material exculpatory' evidence and 'potentially useful' evidence.") This distinction is based on a reluctance to impose

> ... on the [Government] an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution.

Youngblood, 488 U.S. at 58. The potential exculpatory value and import of the video recording herein is unknown and in dispute.

The Government's benign negligence in the video recording's destruction is not bad faith. See United States v. Loud Hawk, 628 F.2d 1139, 1152-53 (9th Cir. 1979) (Kennedy J., concurring). First, the Government was constrained to one hour to archive the video recording. Second, the Government initiated efforts to archive the video recording within

that one hour. Third, the Government did not act deliberately to destroy the video recording. Fourth, the Government was in transition in upgrading its established and reasonable standards of care for its law enforcement functions.[1]

### III. CONCLUSION

The video in the instant case was of such a nature that Defendant was unable to obtain comparable evidence by other reasonably available means. However, because the contents of the video are unknown and in dispute, any exculpatory value is only potential and not material. Consequently, the Government's failed efforts to save the video do not constitute bad faith.

### IV. RECOMMENDATION

For the foregoing reasons, the Magistrate Judge recommends that the District Court deny Defendant's Motion to Dismiss Indictment for Destruction of Evidence (Doc. No. 23).

Pursuant to 28 U.S.C. §636(b) and Rule 59 of the Federal Rules of Criminal Procedure, any party may serve and file written objections within ten days after being served with a copy of this Report and Recommendation. If objections are filed, the parties should use the following case number: **CR 07-428-TUC-JMR**.

Failure to file objections in accordance with Fed.R.Crim.P. 59 will result in waiver of the right to review.

DATED this 5th day of September, 2007.

_____
Héctor C. Estrada
United States Magistrate Judge

---

[1] Defendant argues that the CBP Officers knew that the video recording could not be archived onto a disc within an hour and could have purchased a video camera at a local store to film the video recording. "[T]he Due Process Clause is [not] violated when the police fail to use a particular investigatory tool...." Youngblood, 488 U.S. at 59.